# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **PETE GUTIERREZ,** | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **A-06-CA-917-SS** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of** | § | |
| **Criminal Justice–Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 37); and Petitioner's Reply to Respondent's Answer (Document 38). Petitioner, proceeding pro se, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

### STATEMENT OF THE CASE

### I.    PROCEDURAL HISTORY

According to Respondent, the Director has lawful and valid custody of Petitioner Pete Gutierrez pursuant to a judgment and sentence of the 331st Judicial District Court of Travis

County, Texas, in cause number 995317, styled *State of Texas v. Pedro Edwardo Gutierrez Alias Pete Gutierrez*. Gutierrez was charged with murder to which he entered a plea of not guilty to a jury. C.R. 8-11.[1] The jury found Gutierrez guilty as charged, and on February 16, 2001, the jury assessed a fifty-year sentence. *Id.* at 8.

Gutierrez's conviction was affirmed on August 30, 2002, and the subsequent motion for rehearing was overruled on October 3, 2002. *Gutierrez v. State*, 85 S.W.3d 446 (Tex. App.–Austin, 2002, pet. ref'd), *cert. denied*, 544 U.S. 1034, 125 S. Ct. 2245 (2005). Gutierrez filed a state application for habeas corpus relief on March 19, 2003, seeking permission to file an out-of-time petition for discretionary review ("PDR"). The Texas Court of Criminal Appeals granted relief on September 10, 2003. *Ex parte Gutierrez*, Appl. No. 56,526-01, 2003 WL 22097232 (Tex. Crim. App. Sept. 10, 2003). Gutierrez filed his PDR on January 2, 2004, and the Texas Court of Criminal Appeals refused the PDR on March 24, 2004. *Gutierrez v. State*, No. 1664-03 (Tex. Crim. App. 2004). Petitioner subsequently filed a petition for writ of certiorari with the Supreme Court, which was denied on May 16, 2005. *Gutierrez v. Texas*, 544 U.S. 1034, 125 S. Ct. 2245 (2005).

Gutierrez filed a second state application for habeas corpus relief on April 27, 2006. The Texas Court of Criminal Appeals denied the application without written order on October 25, 2006. *Ex parte Gutierrez*, Appl. No. 56,526-02.

On November 15, 2006, the Court received Gutierrez's federal application for habeas corpus relief. On June 29, 2007, the Court dismissed it as time-barred pursuant to *Salinas v.*

---

[1] C.R. [#] indicates a reference to the state Clerk's Record. [#] R.R. [#] indicates citation to a particular volume of the Reporter's Record and Supp. R.R. [#] is a citation to the Supplemental Reporter's Record.

*Dretke*, 354 F.3d 425 (5th Cir. 2004), concluding that Gutierrez's out-of-time PDR did not reinstate the direct review process for purposes of resetting the federal limitations period. Following the dismissal and while the case was on appeal, the Supreme Court held that when "a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant first sought federal habeas relief, his judgment is not yet 'final' for purposes of" the one-year limitations period. *Jimenez v. Quarterman*, 555 U.S. 113, –, 129 S. Ct. 681, 686 (2009). Accordingly, the Fifth Circuit Court of Appeals vacated the Court's judgment and remanded for further proceedings. *Gutierrez v. Thaler*, No. 07-50857, 2010 WL 1811881 (5th Cir. May 6, 2010).

## II.    FACTUAL BACKGROUND

The factual background of this case appears in the Third Court of Appeals opinion.

On October 31, 1999, [Pete Gutierrez] hosted a Halloween party at his residence. [Keith] Watson, accompanied by his friend Paul Davies, arrived at the party around 10:00 p.m. Witnesses testified that at some point Watson engaged in a verbal altercation with a party guest inside appellant's home. There was no physical contact between Watson and the guest, nor were weapons drawn. Appellant asked Watson to leave. There was testimony that Watson did not want to leave because he resented being blamed for the altercation. Witnesses testified that Watson's friends were successful in encouraging him to leave the party and that they began walking toward their car.

As Watson was leaving, appellant went to the front yard of his home where he confronted Watson. Witnesses heard appellant ask Watson if he wanted to go "one-on-one," meaning that appellant asked Watson if he wanted to fight. Watson took off his shirt. There was no indication that he was carrying a weapon. Appellant and Watson began punching one another. Appellant pulled a knife from his back pocket and began waving it at Watson. Appellant stabbed Watson in the chest, puncturing his heart and killing him. There was testimony that witnesses did not realize Watson had been stabbed until he tried to scream and then fell to the ground. Appellant ran into his house, took off his shirt, and hid it in his couch. Appellant threw the knife away, and it was never recovered.

When first questioned about the event, appellant denied that he was involved in a physical confrontation with Watson and blamed Watson's death on an unknown Hispanic male. After being confronted with information gathered from other witnesses, appellant admitted he stabbed Watson.

. . .

Appellant admitted to stabbing Watson, and numerous witnesses testified they observed appellant stab Watson. Although appellant claims he acted in self-defense, Watson was not in possession of a weapon, nor had he threatened appellant with deadly force. An autopsy of Watson's body revealed that he had defensive wounds on his hands and stab wounds in his back.

*Gutierrez*, 85 S.W.3d at 450.

## III. PETITIONER'S GROUNDS FOR RELIEF

Gutierrez raises the following grounds for relief:

1. Gutierrez was denied effective assistance of counsel by his trial counsel's failure to move for a continuance rather than a mistrial when alleged *Brady* material was disclosed after jury selection. Pet. at 7 (Claim 1).[2]

2. Gutierrez was denied effective assistance of counsel by his trial and appellate counsel's failures to properly support the *Brady* violation contention presented by a motion for new trial by adequately investigating, interviewing, and subpoenaing material defense witnesses. Pet. at 7, 8e (Claims 2 & 9c).

3. The trial court erred in denying the motion for new trial based on the *Brady* contention, because the evidence was impeachment evidence related to the victim and would have served as mitigating evidence in relation to self-defense and punishment. Pet. at 8 (Claim 4).

4. The prosecutor withheld exculpatory impeachment evidence, in violation of *Brady,* impairing Gutierrez's ability to present his theory of self-defense. Pet. at 8f (Claim 10).

5. A due-process violation created by the prosecutor serving as a witness at the new trial hearing on the disclosure of the *Brady* material and also assisting the

---

[2] Gutierrez repeatedly refers to an "attached memorandum of law" in setting out grounds for relief. *See, e.g.,* Pet. at 7. No such memorandum appears in this Court's records and the Court has taken the reference to mean the "Memorandum of Law" attached to Gutierrez's state habeas application, filed April 27, 2006. C.R. 39, 41-115.

assistant prosecutor by giving closing argument at the hearing. Pet. at 7 (Claim 3).

6.     The trial court violated the Confrontation Clause by allowing the prosecution to present police narrative hearsay regarding two alleged eye witnesses (Yadira Gutierrez and Roberto Ellis) who were not called to testify. Pet. at 8a (Claim 5).

7.     The trial court erred by allowing the prosecution, over objection, to introduce extraneous offenses and bad acts by Gutierrez into evidence and not giving the requested limiting instruction to the jury. Pet. at 8c (Claim 6).

8.     The trial court denied Gutierrez due process and a fair trial by not permitting the introduction of evidence of the decedent's earlier, extraneous offense of carrying a knife. Pet. at 8d (Claim 7).

9.     The trial court denied Gutierrez due process and a fair trial by not allowing defense counsel to advance the defense of self-defense. Pet. at 8d (Claim 8).

10.     Gutierrez was denied effective assistance of counsel on appeal by his appellate counsel's failure to:

    a.     raise a Confrontation Clause issue in relation to cross-examination of prosecution witness Paul Davies about the deceased's prior bad acts of violence, Pet. at 8e (Claim 9a); and

    b.     raise a due process issue based on a conflict of interest stemming from the prosecutor's participation in the hearing for the motion for new trial as a witness regarding the alleged *Brady* material, Pet. at 8e (Claim 9b).

## IV.   EXHAUSTION OF STATE-COURT REMEDIES

Respondent does not contest that Gutierrez has exhausted his state-court remedies regarding the claims brought in this application. A review of the state-court records submitted by Respondent shows that Gutierrez has properly raised these claims in prior state-court proceedings.

**DISCUSSION AND ANALYSIS**

**I.     THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  By its terms, § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in § 2254(d)(1) and (d)(2).  *See, e.g., Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 780-81 (2011).  Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  *Id.*  A state court need not cite or even be aware of Supreme Court decisions under § 2254(d).  *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362 (2002) (*per curiam*)).  When a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing there was no reasonable basis for the state court to deny relief.  *Id.*  This is so whether or not the state court reveals which of the elements in a multi-part claim it found insufficient; as the Supreme

Court explained, § 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court, 28 U.S.C. § 2254(d)(1); *(Terry) Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000), or that it "involved an unreasonable application of" such law, 28 U.S.C. § 2254(d)(1), or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quoting *Williams*, 529 U.S. at 412, 120 S. Ct. at 1523). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. *See id.*

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *See* 28 U.S.C. § 2254(e)(1). While such determinations are presumed to be correct, the petitioner can

rebut this presumption by clear and convincing evidence. *See id.* Absent an unreasonable determination in light of the record, deference must be given to the state court's fact findings. *See* 28 U.S.C. § 2254(d)(2). With these principles in mind, this Court now turns to the issues raised by the pleadings in this case.

## II. GUTIERREZ'S GROUNDS FOR RELIEF

Having independently reviewed the entire state-court record and Gutierrez's asserted claims, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A. Ineffective Assistance of Trial Counsel Based on Lack of Motion for Continuance (Claim 1)

In his first ground for relief, Gutierrez argues that he was denied effective assistance of trial counsel by his counsel's failure to move for a continuance when alleged *Brady* material was not disclosed until after jury selection. Gutierrez argues that his trial counsel was ineffective by moving for a mistrial,[3] but failing to move for a continuance, when the prosecution waited until after jury selection to disclose the "handle-by" records of the victim, which included allegedly exculpatory or mitigating evidence of the victim's violent character and prior criminal history involving violent acts.[4] The State counters that Gutierrez fails to demonstrate the necessary

---

[3] The Court cannot locate a motion for mistrial in the state-court record. There appears to be no dispute, however, that such a motion was in fact made; multiple references to a motion for mistrial appear in the record. *See, e.g.*, Supp. R.R. at 17; *Gutierrez*, 85 S.W.3d at 452 n.3 (noting same).

[4] The Third Court of Appeals explained that "handle-bys" are police incident reports available through local police databases that include the names of individuals in any capacity, including, for example, witnesses, victims, and suspects. *See Gutierrez*, 85 S.W.3d at 451 n.1; *see also* Supp. R.R. at 152-53.

resulting prejudice from the absence of a motion for a continuance, that is, that it is reasonably probable that the outcome of the proceeding would have been different absent trial counsel's purported error.[5]  Answer at 29-31.  More specifically, the State argues that Gutierrez fails to demonstrate that a motion for continuance would have been successful, asserting that Gutierrez does not show that even with a continuance, the witnesses that counsel might have secured after obtaining the handle-bys would have been available to appear, and that they would have testified favorably.  Answer at 31.  The Director further contends that, even if the handle-bys would have generated witness testimony favorable to Gutierrez, Gutierrez fails to show that the outcome of the proceeding would have differed and that the testimony would have created a basis for the jury to determine that Gutierrez was justified in using deadly force in self-defense.[6]

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064.  In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of

---

[5]  The Director reserves argument regarding counsel's alleged deficiency and addresses only whether Gutierrez was prejudiced by the alleged error.  *See* Answer at 30 n.11.

[6]  The Director also reserves argument whether the evidence at issue is *Brady* material, *see* Answer at 10 n.5, and the Court assumes *arguendo* that the handle-bys were such material.

counsel's performance must be highly deferential. *Id.* at 686-89, 104 S. Ct. at 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). Ultimately, the focus of the inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. *Id.* at 695-97, 104 S. Ct. at 2069.

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687, 104 S. Ct. at 2064. Because a convicted defendant must satisfy both requirements of *Strickland* to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement. *Strickland,* 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

Gutierrez fails to demonstrate the necessary prejudice for his claim. He does not show a reasonable probability that the result of the proceeding would have been different if a request for a continuance had been made, and thus fails to satisfy his burden under *Strickland*. *See* Pet. at 7;

Pet'r Mem. of Law, at C.R. 76. Gutierrez cannot make such a showing for several independent reasons.

First, Gutierrez cannot demonstrate that a motion for continuance would have been successful, and mere allegations of prejudice are not sufficient to satisfy *Strickland*'s prejudice requirement. *See Strickland*, 466 U.S. at 694; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Indeed, at the hearing on the motion for new trial, the trial court specifically addressed a hypothetical motion for a continuance based on the late disclosure of the purported *Brady* material and stated that when trial counsel raised this issue, the trial court had observed that, "I didn't know if it was covered by *Brady* or not, but it did appear to me that that motion that he filed very late, you know, just before trial was probably not timely filed." Supp. R.R. at 202; *see also* Supp. R.R. at 209-10, 184-85 (explaining that there had been an earlier trial with a transcript available, that trial court had previously granted two continuances for unrelated reasons, and that counsel's request for the handle-bys was not filed with the court until the Friday before the Monday on which trial was set). The trial court further offered that it would not have granted a continuance, but rather would have only granted a recess for a day or two or a few hours to review the handle-by material and subpoena witnesses. Supp. R.R. at 66-67. The unlikeliness that a continuance request would have been granted is further demonstrated by the fact that Gutierrez sought potential witnesses based on the handle-bys for only a limited set of the victim's offenses and did so for only a limited purpose. Counsel was interested in only witnesses related to three assault offenses and a public intoxication offense and sought the appearance of the officers handling those cases. 3 R.R. at 163. The trial court ordered the prosecution to subpoena the officers in the assault cases but rejected the relevance of the public

intoxication case to the purpose of calling the witnesses, that is, the victim's propensity for violence. 3 R.R. at 163-64. Given the limited nature of Gutierrez's counsel's request, the limited utility of the witnesses, and the fact that the trial court did order that the requested officer witnesses be subpoenaed to testify, it is unlikely that the trial court would have granted a continuance.[7]

Second, Gutierrez fails to show that even if a continuance were granted, counsel could have located additional witnesses from the handle-by material, the witnesses would have been available to appear, they would have testified favorably, and they would have offered admissible testimony. Gutierrez provides nothing but speculation that the witnesses that counsel could have possibly obtained after having received the victim's handle-bys would have been available for trial and would have testified favorably. Indeed, the record shows that Gutierrez hired an investigator after obtaining the handle-bys who worked on locating and contacting potential witnesses for seven hours, at which point he discontinued at the direction of counsel. Supp. R.R. at 181. The investigator did not testify on the percentage of the potential witnesses he was able to reach, but did testify that he was unable to locate three victims of crimes involving violence by the victim. Supp. R.R. at 181-82. Gutierrez also offers only speculation, and no proffer of testimony, that potential witnesses would have offered the opinion that the victim had a bad character for peacefulness and law-abidingness. Lastly, the trial court might not have determined the hypothetical and possibly favorable testimony to be admissible. In short, there is

---

[7] Also cutting against the possibility of a continuance was the fact that Gutierrez's counsel was admittedly given "open file discovery" and knew of the victim's criminal history in advance of trial, specifically, at least three arrests. 2 R.R. at 252. Moreover, the trial court had set and convened the *Brady* motion for hearing prior to the first day of trial, but continued the motion when Gutierrez failed to appear for the hearing. 2 R.R. at 8, 254.

no evidence showing who would have actually testified and what favorable, admissible testimony they would have offered.

Even indulging this speculation that witnesses could have been located and that they would have testified that Watson had a violent character, Gutierrez fails to demonstrate that the outcome of the proceeding would have differed had a continuance been sought and granted. Gutierrez sought testimony on a very limited point: an opinion of the victim's reputation for peacefulness and law-abidingness based on a single encounter. *See, e.g.,* 4 R.R. at 119, 121. The value of such testimony, even if obtained, would be limited, particularly in light of the fact that Gutierrez's counsel did contact and had three witnesses from the handle-bys appear for trial–a victim, a witness, and an arresting officer–who offered clear testimony regarding the victim's violent acts and reputation for violence for the jury's consideration. *See* 4 R.R. at 140-41, 143-52; *see also* Supp. R.R. at 157-59.[8] Additional, similar testimony would not have provided a qualitatively different set of facts that would have permitted the jury to conclude that Gutierrez was justified in using deadly force in self-defense.[9] Other than testimony by Gutierrez,

---

[8] *See, e.g.*, 4 R.R. at 141 (testimony by arresting officer that "[a]t the time I encountered Mr. Watson, he was not peaceful or law-abiding."); *id.* at 145-46 (testimony by an assault victim that "Mr. Watson beat me up. He broke my nose in three places and fractured my jaw. . . . I'd say he was very prone to violence. . . . His reputation in the community for violence, I would say, is a great one. He was in many fights. He beat up many people."); *id.* at 148 ("Q: Why didn't you file charges? A: Because I was afraid. I was afraid of retribution from him or someone else or something."); *id.* at 150 ("Q: Did you know his reputation on the community for violence? . . . A: He was probably the scariest guy I went to school with. . . . Q: . . . Do you have an opinion as to Mr. Watson's pertinent character trait for violence? . . . A: Incredibly violent, yes.") (testimony by a witness to an assault).

[9] *See* TEX. PENAL CODE § 9.31(a), (b)(1) ("person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force" but not "in response to verbal provocation alone"); *id.* at § 9.32 (deadly force justified if actor would "be justified in using force

no testimony or evidence suggested that the fight started when the victim charged Gutierrez or showed a weapon; rather, all the other witnesses testified that Gutierrez charged the victim. *See, e.g.,* Supp. R.R. at 173, 217. Additional testimony that reflected a character that was not disposed toward peacefulness would not have supplied the jury with a basis to disregard the witnesses at the scene of the fight and murder and conclude that the victim had actually charged Gutierrez and he had killed merely in self-defense.

In sum, even if the handle-bys would have generated witnesses presenting admissible testimony favorable to Gutierrez, Gutierrez fails to show that the outcome of the proceeding would have differed and that the testimony would have created a basis for the jury to determine that Gutierrez was justified in using deadly force in self-defense or otherwise harbor a reasonable doubt about his guilt.

Gutierrez fails to show the necessary prejudice. Because a convicted defendant must satisfy both *Strickland* requirements, a failure to establish either deficient performance or prejudice precludes habeas relief. *Strickland*, 466 U.S. at 693, 697, 104 S. Ct. at 2067, 2069; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992). The state court's application of the clearly established federal law of *Strickland* and its determination of facts in light of the evidence were not unreasonable. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas relief on Gutierrez's claim that he received ineffective assistance of trial counsel.

---

against the other under Section 9.31; if a reasonable person in the actor's situation would not have retreated; and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force").

**B.** **Ineffective Assistance of Trial and Appellate Counsel Based on Failure to Investigate, Interview, and Subpoena Potential Witnesses for Motion for New Trial Hearing (Claims 2 & 9c)**

Gutierrez contends that he was denied effective assistance of counsel by both his trial counsel and appellate counsel's failures to properly support the *Brady* violation contention presented by the motion for new trial by adequately investigating, interviewing, and subpoenaing potential material defense witnesses.[10]  Pet. at 7, 8d.  The Director argues that there is no clearly established federal law that entitles a defendant to effective assistance of counsel during the period of time for filing new trial motions, and thus Gutierrez's complaint cannot provide a basis for habeas relief.  Answer at 32-33.

The *Strickland* standards for ineffective assistance of trial counsel are discussed above. To succeed on an ineffective-assistance-of-counsel-on-appeal claim, Gutierrez must also satisfy the two standards set out in *Strickland*.  *See Smith v. Robbins*, 528 U.S. 259, 286, 120 S. Ct. 746, 764 (2000) (explaining that *Strickland* provides standards for evaluating appellate counsel).  A petitioner must demonstrate that appellate counsel was deficient, and that the deficiency prejudiced his appeal.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  To demonstrate deficiency on the part of counsel, a petitioner must show that counsel "fail[ed] to find arguable issues to appeal–that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."  *Smith*, 528 U.S. at 286, 120 S. Ct. at 764.  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal."  *Id.* at 288, 120 S. Ct. at 764 (citing *Jones v.*

---

[10]  Gutierrez's trial counsel filed the original motion for new trial and his subsequently hired appellate counsel filed an amended motion for new trial.  C.R. 131-43.  Gutierrez complains about both attorneys' performance in relation to the new-trial request.

*Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983)).  Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  To demonstrate that a failure to raise an issue was deficient, a petitioner must show that a particular nonfrivolous issue was clearly stronger than issues that counsel did present.  *Id.*  Additionally, an appellate counsel's failure to raise particular issues on appeal does not deprive an appellant of the effective assistance of counsel when the petitioner did not show the existence of any trial errors with arguable merit.  *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973).

Under the second *Strickland* prerequisite, appellate counsel becomes ineffective when counsel's errors are prejudicial, that is, when there is a reasonable probability that but for the error, the ultimate result would have been different.  To demonstrate prejudice, a petitioner must show that, but for appellate counsel's deficient performance, he would have prevailed on appeal.  *Smith*, 528 U.S. at 286, 120 S. Ct. at 764.

Since the briefing on Gutierrez's petition was filed, the Fifth Circuit Court of Appeals issued a decision in *McAfee v. Thaler*, recognizing a Sixth Amendment right to the assistance of counsel at the motion-for-new-trial stage of proceedings (the post-trial, pre-appeal period) in Texas.  630 F.3d 383, 393 (5th Cir.), *pet. for cert. filed*, – U.S.L.W. – (U.S. May 3, 2011) (No. 10-10273).  The Fifth Circuit also held that its decision did not announce a new constitutional rule of law whose application would be barred by the *Teague* doctrine, but instead recognized "an old rule–the right to the assistance of counsel at critical stages of a proceeding–to new facts."  *Id.* at 392 n.8.

Even with the *McAfee* decision, Gutierrez's claims of ineffective assistance of trial and appellate counsel on this point nevertheless fail because he does not and cannot show prejudice as required by *Strickland*. *See* Section *supra* II.A. The trial court considered and rejected the possibility that additional witnesses discoverable from the handle-bys who might offer testimony indicating that the victim's character was prone to violence would have changed the jury's verdict or sentence. At the hearing on the motion for new trial, the trial court observed that the absence of the handle-by material did not prejudice Gutierrez.

> I don't think [the material] was exculpatory. I don't think a lot of that evidence is exculpatory, number one. You know, [trial counsel's] testimony about how, well, this would have helped him on the guilt/innocence portion, I just don't think that's true. You know, he has the defendant go up and testify that the victim charged him. He's the only guy that testified to that. Everybody else, including the defendant's friends and his family members, everybody to a person testified that the defendant charged at and, you know, got in a fight with the victim after the victim had verbally provoked him and said, okay, let's get on it and all that kind of thing. You know, verbal provocation is not a defense in an assault case or anything like that. And, you know, he can stand there and say as many things as he wanted to, but the defendant was not entitled to charge him and attack him, which is what all the evidence showed, all the credible evidence.

> . . . [T]he law is going to be clear. Once [the court of appeals] see[s] those handle-bys they're going to see what things on those would have been admissible, if any, and number two, they're going to be able, you know, in terms of this question I think Mr. Hines said that one of the things he intended to do was get police officers in here to testify the reputation that they knew the guy and his reputation was bad or their opinion of him was that he had a bad character for violence and that sort of thing.

> But my recollection of the testimony is that there was on the record, there was evidence of the fact that this de[ceden]t in fact did act violently in the past. There was several witnesses that came on and testified about an assault that he had committed against another person. And, you know, really I think he kicked him in the head or something like that. You know, really did some serious damage to the fella. And I know that there was some testimony on that. I think there was other testimony that was given before the jury as to the fact that this guy was not, you know, Mr. Innocent, you know.

Supp. R.R. at 74-75, 76-77. For the reasons discussed *supra* Section II.A, there was no resulting prejudice from the absence of those potential witnesses and their possible testimony at the hearing on the motion for new trial.

Gutierrez fails to demonstrate that the state court's rejection of his claims of ineffective assistance of trial and appellate counsel in relation to the new trial hearing was an unreasonable application of clearly established federal law. Gutierrez's habeas claims on these grounds should also be denied.

### C. Denial of New Trial Based on Purported *Brady* Material (Claim 4)

Gutierrez contends that the trial court's denial of the motion for new trial based on the *Brady* contention denied him due process because the handle-bys offered mitigating or exculpatory evidence in relation to self-defense and punishment. Pet. at 8. He disagrees with the trial court's inference that the jury already took into account the victim's non-peaceful character when the jury assessed Gutierrez's sentence at ten years below the maximum sentence. Pet. at 8; Supp. R.R. at 218. The Director asserts that Gutierrez's complaint about the alleged reasoning behind the trial court's denial of his motion for new trial fails to demonstrate that the state court's rejection of his *Brady* claim was unreasonable. Answer at 15.

Although Gutierrez complains about the alleged reasoning behind the trial court's denial of the motion for new trial, he fails to demonstrate that the state court's rejection of his *Brady* habeas claim was an unreasonable application of clearly established federal law. In reviewing the state court's judgment, this Court considers the decision of the Third Court of Appeals. When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest on the same

18

ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594-95 (1991). In this case, the Texas Court of Criminal Appeals denied without written order Gutierrez's state habeas application raising this claim. *Ex parte Gutierrez*, Appl. No. 56,526-02, at cover. Because the Third Court of Appeals issued "the last reasoned opinion" on the matter, this Court "looks through" the Texas Court of Criminal Appeals's order to the state appellate court's decision.

*Ylst*, 501 U.S. at 803, 111 S. Ct. at 2594-95. On this point, the Third Court of Appeals stated:

> [Gutierrez] timely filed a motion for new trial contending, *inter alia*, that the State suppressed evidence favorable to the accused in violation of *Brady*, thereby violating [Gutierrez]'s constitutional rights. The district court denied [Gutierrez]'s motion for new trial. By his seventh issue, [Gutierrez] contends this was an abuse of the district court's discretion. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).
>
> [Gutierrez] presented argument on his motion for new trial that the district court committed a material error by denying his motion for mistrial for an alleged *Brady* violation. [Gutierrez] argues that the State's failure to provide the "handle-bys" of [decedent] Watson until ordered by the trial judge the night of voir dire serves as a *Brady* violation. [Gutierrez] argues that because this information was not provided to him until after trial commenced, his defense was undermined and he was deprived of a fair trial. [Gutierrez] argues that the "handle-bys" confirmed Watson's violent character and the "degree of terror he can strike in his victims." However, in the two months between trial and the hearing on the motion for new trial, [Gutierrez] did not produce any witnesses to substantiate these claims. Therefore we hold that the district court did not abuse his discretion in denying [Gutierrez]'s motion for new trial and overrule [Gutierrez]'s seventh point of error.

*Gutierrez*, 85 S.W.3d at 453. In overruling Gutierrez's claim on direct appeal, the Third Court of Appeals rejected the argument that his defense was undermined by the late disclosure of the handle-by material and that the trial court should have granted a new trial.

To prevail on a due process claim brought under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), Gutierrez must show that the prosecution: (1) suppressed evidence, (2) that was favorable to the defense, and (3) that was material. *See, e.g., Mahler v. Kaylo*, 537 F.3d 494, 500

(5th Cir. 2008); *see also Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999). Evidence is material only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985); *accord Banks v. Thaler*, 583 F.3d 295, 311 (5th Cir. 2009); *see also Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 1565-66 (1995). The Supreme Court elaborated on the materiality standard in *Kyles*, explaining that "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial'" and when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434, 435, 115 S. Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S. Ct. at 3381).

Applying these principles to this case, and with due regard to the deferential standard of review required by the AEDPA, it is clear that the state court did not unreasonably apply clearly established federal law to the facts of Gutierrez's case in deciding that no *Brady* violation occurred. Even assuming that the late-disclosed evidence was mitigating or exculpatory, Gutierrez's *Brady* claim is unavailing because he cannot show that the late-disclosed evidence satisfied the test for materiality. Gutierrez's argument is based on the assumption that the evidence at trial would have been subject to substantial impeachment, indeed, undermined, by some very narrow and limited testimony that the victim was on certain occasions prone to non-peaceful behavior and would have justified an otherwise unsupported theory that the decedent attacked Gutierrez. As the state trial court explained in rejecting the new-trial motion, possibly favorable testimony from unidentified, hypothetical witnesses developed from the handle-by

material simply would not have altered the jury's verdict or sentence. *See* Supp. R.R. at 74-75, 76-77. Moreover, Gutierrez failed to provide the trial court with any specific witnesses or the substance of their potential testimony to attempt to demonstrate that material evidence was omitted from the trial as a result of the belatedly disclosed handle-by material.

Gutierrez fails to demonstrate that there is a reasonable probability that the result of his trial would have been different. Because the hypothetical, unspecified testimony–which was not presented to the trial court–would not have undermined the overwhelming and convincing witness testimony regarding events surrounding the knifing nor the physical evidence of the knife wounds, an earlier disclosure of the handle-bys would not have resulted in an acquittal or a significantly different sentence. In short, based on the record, the handle-by material does not "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S. Ct. at 1566; *see also, e.g., Woodfox v. Cain*, 609 F.3d 774, 818 n.20 (5th Cir. 2010) (denying habeas relief on *Brady* claim when suppressed investigation notes did not put case in a new light). Therefore, the state court's denial of habeas relief on the *Brady* claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" nor was it "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). The petition should be denied as to this claim of error as well.

### D. *Brady* Violation & Effect on Self-Defense (Claim 10)

Gutierrez contends that the prosecutor's disclosure of the handle-bys after jury selection withheld exculpatory impeachment evidence, in violation of *Brady,* impairing his ability to present a theory of self-defense that the deceased victim was the initial aggressor. Pet. at 8f-8g; *see also*

Pet. 8d-8e.  The Director counters that the doctrine of independent and adequate state grounds bars this claim because Gutierrez failed to comply with Texas's contemporaneous objection rule by moving for a continuance when the prosecution disclosed the handle-bys.  Answer at 10-11.

Gutierrez's claim is procedurally barred from federal review because he failed to properly raise a contemporaneous objection to the prosecution's disclosure of the material after jury selection.  *See, e.g., Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  Under Texas law, the failure to move for a continuance after disclosure of *Brady* material waives any error.[11]  *See Gutierrez*, 85 S.W.3d at 452 (citing *Williams v. State*, 995 S.W.2d 754, 762 (Tex. App.–San Antonio 1999); *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982)).  This contemporaneous objection rule requiring that errors be properly preserved by an objection serves as "an adequate procedural bar," preventing federal habeas review of issues that were defaulted for lack of contemporaneous objection.  *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000); *Fisher*, 169 F.3d at 300.  The doctrine of independent and adequate state grounds applies

> in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions . . . . The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment rests on independent and adequate state procedural grounds.

*Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554 (1991) (citations omitted).

As previously explained, when there has been one reasoned state-court judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same

---

[11]  A procedural bar may be overcome, however, if the petitioner can show cause and prejudice, or that failure to consider the claim will result in a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).  Gutierrez fails to allege, much less show, cause or prejudice.

claim are presumed to rest upon the same ground. *Ylst*, 501 U.S. at 803, 111 S. Ct. at 2594-95; *see also supra* Section II.C. Because the Third Court of Appeals issued "the last reasoned opinion" on the matter, this Court looks to the state appellate court's decision. *See Ylst*, 501 U.S. at 803, 111 S. Ct. at 2594-95. The Third Court of Appeals held that Gutierrez waived this claim by failing to make a proper contemporaneous objection. *Gutierrez*, 85 S.W.3d at 452. Gutierrez's claim is thus procedurally barred from federal habeas review because he failed to properly raise a contemporaneous objection to the prosecution's disclosure of these materials after jury selection. *See Fisher*, 169 F.3d at 300.

## E. Prosecutor Conflict of Interest (Claim 3)

Gutierrez asserts that a conflict of interest was created by Assistant District Attorney Gary Cobb's participation in the hearing on the motion for new trial by testifying on the disclosure of the *Brady* material and also, after being disqualified on the basis of being a witness, by assisting another assistant district attorney by giving closing argument.[12] Pet. at 7, 8e. The Director contends that Gutierrez fails to allege or demonstrate that actual prejudice resulted from the dual role. Answer at 35.

---

[12] Gutierrez also conclusorily asserts that the trial court should have enforced "the Rule" after it was invoked and barred Assistant District Attorney Cobb from the courtroom. Pet. at 7. The rule of witness sequestration, or the Rule, provides for the exclusion of witnesses from the courtroom during trial. TEX. R. EVID. 614. The purpose of the Rule is to prevent the testimony of one witness from influencing the testimony of another. *See Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Regardless of whether the witness sequestration rule applied, Gutierrez fails to even assert any resulting prejudice. *See, e.g., Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) ("[W]e look at whether or not the defendant was harmed or prejudiced by the witness's violation; that is, whether or not the witness's presence during other testimony resulted in injury to the defendant."). This related ground accordingly also fails to support habeas relief.

Gutierrez does not demonstrate a conflict of interest implicating a constitutional error, nor does he show the necessary prejudice. He fails to allege, must less demonstrate, a specific conflict of interest embodied in Assistant District Attorney Cobb's role in testifying regarding the particular events surrounding the late disclosure of the purported *Brady* material and then also delivering closing argument in that same hearing on the propriety of setting aside the jury's verdict and granting a new trial on the basis of the late disclosure. Instead, Gutierrez simply describes what happened at the hearing for the motion for new trial. Pet. at 7, 8e. This claim for habeas relief is conclusory, s*ee, e.g., Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983), and also fails to show the necessary prejudice to make out a claim, *see, e.g., Riddle v. Cockrell*, 288 F.3d 713, 721 (5th Cir. 2002) (noting that a conflict of interest must have prejudiced a petitioner's substantive rights in order to serve as a basis for habeas relief); *Williams v. Collins*, 16 F.3d 626, 636 (5th Cir. 1994) (rejecting habeas claim that failed to explain particular conflict of interest or how the alleged conflict of interest prejudiced the petitioner's case).

The state court's determination that this claim could not support habeas relief was not an unreasonable application of clearly established federal law.

### F. Confrontation-Clause Violation Based on Police Hearsay (Claim 5)

Gutierrez argues that his rights under the Confrontation Clause of the Sixth Amendment were violated when Officers James Harrell and Mark Spangler presented hearsay statements of Roberto Ellis and Gutierrez's wife Yadira Gutierrez. Pet. at 8a-8c. The Director contends that trial counsel's failure to object to this hearsay testimony on the basis of the Confrontation Clause

waived any potential error, and that the claim also fails on the merits because the testimony did not inculpate the defendant. Answer at 17-20.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause barred the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004); *see also United States v. Jackson*, – F.3d –, No. 09-10850, 2011 WL 1002195, at *3 (5th Cir. Mar. 22, 2011) (explaining that *Crawford* held that "'[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination'") (quoting *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374).[13]

Gutierrez's claim lacks merit when the testimony at issue is examined. Even assuming that a Confrontation Clause violation occurred, any error was harmless and therefore cannot serve as a basis for habeas relief. On habeas review under the AEDPA, the prejudice of constitutional error in a state-court criminal trial is measured by the "substantial and injurious effect" standard of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710 (1993). *See, e.g., Hughes v. Quarterman*, 530 F.3d 336, 345 (5th Cir. 2008). An error is sufficiently prejudicial only when it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S. Ct. at 1714.

---

[13] *Crawford* applies because it was decided after the completion of Gutierrez's direct appeal. *See, e.g., Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008); *see also Gutierrez v. Texas*, 544 U.S. 1034, 125 S. Ct. 2245 (2005) (denying certiorari).

Even assuming that the witness's statements violated the Confrontation Clause, any error that occurred was harmless. The testimony at issue did not inculpate Gutierrez. Officer Harrell testified that Ellis stated he was standing inside when the stabbing occurred, but noted that the blood spray on his clothing contradicted that statement. 3 R.R. at 34-36, 38, 40. Officer Harrell also testified that when he asked Ellis who stabbed Watson, Ellis simply responded that he was afraid of retaliation, and did not name an assailant. *See id.* at 38, 41. Officer Spangler testified that Mrs. Gutierrez confirmed her husband's story, 3 R.R. at 89, that an unknown Hispanic male was the assailant: "she was told that it was a Hispanic male that had been involved in the disturbance earlier, inside the house, and that that was the one who had stabbed [Mr. Watson]" and had run off, and "that there was a camera that had been used during the night and that camera would have the picture of this Hispanic male on that film." *Id.* at 92-93, 90-91. Officer Spangler also testified that Ms. Gutierrez indicated that her husband "was not involved in the fight in any way," denied that she restrained her husband in a fight between Gutierrez and Watson, and stated that she "had only heard about the fight [between the unknown Hispanic male and Mr. Watson] and then came outside to see it, after it had already took place." *Id.* at 91, 92-93.

Additionally demonstrating the harmlessness of any possible error is the overwhelming evidence of the perpetrator's identity and the ample evidence supporting a verdict of guilt. Indeed, the only real issue in contention at trial was whether Gutierrez supported a theory of self defense, a theory that did not involve the challenged testimony. Any error was harmless under *Brecht. See, e.g., Burgess v. Dretke*, 350 F.3d 461, 472 (5th Cir. 2003).

For these reasons, the state court's rejection of this habeas claim did not constitute a decision contrary to clearly established federal law or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). Gutierrez's claim for relief on this point should be denied.

### G. Limiting Instruction Regarding Gutierrez's Extraneous Offenses and Bad Acts (Claim 6)

Gutierrez contends that he was deprived of due process and denied a fair trial by an erroneous ruling that allowed the prosecution, over objection, to introduce into evidence extraneous offenses and bad acts committed by Gutierrez, and by the trial judge not giving a requested limiting instruction to the jury. Pet. at 8c. The Director asserts that contrary to Gutierrez's claim, the trial court gave a limiting instruction regarding Gutierrez's extraneous offenses and the admission of the acts at issue did not render his trial fundamentally unfair. Answer at 21-25.

Texas law permits extraneous offense evidence if it "is relevant to a noncharacter conformity fact of consequence in the case, such as rebutting a defensive theory." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990)). "As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not by elicited by 'prompting or maneuvering' by the State." *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002) (citing *Shipman v. State*, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980) (stating that State "may not rely on its own questioning" to get into collateral matters, extraneous offenses, and bad acts that "would otherwise be inadmissible")). In this case, after Gutierrez testified on direct examination that Watson swung at him first, the

prosecution questioned Gutierrez outside the presence of the jury about two assaults on his wife, his enrollment in anger management classes, "being in trouble for stolen cars and dope and marijuana, for assault and family violence," pulling out a knife and "stabbing the sheets" when he was angry at his wife, in addition to tearing up pictures of them together, and obtained his admissions about "maybe" two fights he was "involved in" as an adult and that his hands swell when he fights. 4 R.R. at 234-38.

The trial court heard argument and considered at length whether Gutierrez's extraneous offenses were admissible. *See id.* at 239-71. Ultimately, the trial court concluded that only certain offenses and acts were admissible for the limited purpose of rebutting the defense theory that the victim attacked Gutierrez. The trial court explained:

> [T]he general rule that they set forth in [*Halliburton v. State*, 528 S.W.2d 216 (Tex. Crim. App. 1975)] is, in determining whether evidence of extraneous offense[s] is admissible, the ultimate question is whether extraneous offenses tends to disprove Defendant's explanation of the primary offense. The Defendant's explanation of the primary offense in the case at bar is that he was attacked by the deceased, not that he attacked, but that he was attacked by the deceased and that the deceased hit him first. And only in response to that did he draw his knife.
>
> . . . And so all I'm saying is, you know, his description of the event is that he was not the aggressor that day. Now, regardless of the state of the record and regardless of the testimony of other witnesses as to who attacked who and that sort of thing, his testimony is that he was attacked, that he was not the aggressor and that he was attacked.
>
> . . . Therefore, I think that the evidence of other cases, where it was maintained that he was the aggressor–I think evidence of that can come in.

*Id.* at 270-71. Accordingly, the only extraneous offenses and bad acts introduced by the prosecution were two assaults by Gutierrez against his wife in 1995 and 1996, Gutierrez's enrollment in an anger management class related to one of those incidents, and Gutierrez's

statement to an officer that he "get[s] in fights a lot" and his hands swell when he gets in fistfights. *Id.* at 295-97.

The relevant question before the Court is whether the admission of this testimony violated Gutierrez's federal constitutional rights. *See Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007). The admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is "so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S. Ct. 2597, 2608 (1991); *see also Wood*, 503 F.3d at 414. The Fifth Circuit has explained that "[a]n extraneous offense may be admitted into evidence without violating the due process clause if the government makes a 'strong showing that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'" *Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991) (quotation and citation omitted). In the context of habeas review, even if the evidence was indeed prejudicial, the erroneous admission of such prejudicial evidence "will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). Even if the admission of the evidence was constitutional error, the claim still fails if the petitioner has not shown that the testimony had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Janecka v. Cockrell*, 301 F.3d 316, 328-29 (5th Cir. 2002) (quoting *Brecht*, 507 U.S. at 637, 113 S. Ct. at 1714) (brackets omitted).

Considering the case as presented to the jury in its entirety, Gutierrez has not and cannot demonstrate that the admission of these four acts and incidents was either unduly prejudicial, permeated his trial with unfairness, or had a substantial or injurious effect in the jury's

determination of its verdict. The testimony and evidence overwhelmingly supported the prosecution's contention that the victim was attacked by Gutierrez and the complained of extraneous offenses and bad acts that were also presented to the jury did not inject a substantial influence to conclude that Gutierrez was the aggressor. The other evidence at trial independently and conclusively demonstrated that Gutierrez was responsible for the stabbing and was the initial aggressor.

Additionally, contrary to Gutierrez's assertion, the trial court did issue a limiting instruction, directing that only if the jurors "find and believe, beyond a reasonable doubt, that the Defendant participated in such transactions or committed such acts, if any," then those extraneous acts may only be considered "for the purpose of determining whether [Gutierrez] was the aggressor on the night in question, if it does, and for no other purpose." 5 R.R. at 9-10. Because the jury was given this limiting instruction, Gutierrez cannot complain about the absence of such an instruction. Moreover, the jury is presumed to have followed the trial court's instruction limiting its consideration of the extraneous offenses, which served as a protection against any unduly prejudicial effect. *See, e.g., Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002).

The state court's determination that this claim did not warrant habeas relief was not an unreasonable application of clearly established federal law, and habeas relief from this Court is not authorized under 28 U.S.C. § 2254(d)(1).

**H.      Denial of Due Process and Fair Trial (Claim 7)**

Gutierrez contends that the trial court erred in two additional ways that denied him due process and a fair trial.  Neither contention succeeds.

**1.      Introduction of Victim's Offense of Carrying a Knife (Claim 7? 8?)**

Gutierrez argues that the trial court denied him due process and a fair trial by not permitting evidence of the victim's earlier, extraneous offense of carrying a knife, thereby preventing him from presenting supporting evidence for his theory that the victim was the first aggressor.  Pet. at 8d.  The Director takes the position that the trial court decided the evidentiary issue correctly and that Gutierrez fails to show that the state court made any decisions that were contrary to or involved the unreasonable application of federal law.  Answer at 25-27.

Gutierrez presented this claim to the Texas Court of Criminal Appeals in his application for state habeas relief, after he had presented this claim to the Third Court of Appeals on direct appeal.  C.R. at 35; *Gutierrez*, 85 S.W.3d at 455-56.  Because the Texas Court of Criminal Appeals denied this claim without written order, the Court "look[s] through" the Texas Court of Criminal Appeals's decision to the last reasoned decision, *Ylst*, 501 U.S. at 803, 111 S. Ct. at 2594-95, the decision issued by the Third Court of Appeals.  The state appellate court resolved this claim as follows.

> By his tenth point of error, [Gutierrez] contends that the district court erred by refusing to admit evidence that Watson, on an earlier occasion, carried an illegal knife.  [Gutierrez] proffered the opinion testimony of Officer Keith Suits that Watson was neither peaceful nor law-abiding.  [4 R.R. at 118, 120-22.]  The State objected to Suits's testimony on the grounds that because Suits had had only one encounter with Watson, he lacked sufficient knowledge from which to base an opinion.  [*Id.* at 118-19, 123.]  The State also objected on the grounds that Suits did not observe Watson's behavior and that the probative value of such evidence

was substantially outweighed by its prejudicial effect. [*Id.* at 124.] The district court overruled these objections. [*Id.* at 126.] Officer Suits testified that Watson was neither peaceful nor law-abiding. [*Id.* at 141.] On cross-examination, the State asked the following:

> Q: At the time you contacted him, there was some fight at a hotel or something like that–some disturbance at a hotel, correct?
> A: Correct, appeared to be a high school party.
> Q: When you arrived there, he was intoxicated?
> A: Right.
> Q: You placed him under arrest?
> A: Correct.
> Q: That's against the law to be intoxicated in public, correct?
> A: Yes, it is.

[4 R.R. at 141-42.] At a bench conference, [Gutierrez] argued that the State had "opened the door" to testimony that following the arrest, Officer Suits found an illegal knife on Watson's person. [*Id.* at 142.] [Gutierrez] asserted that the State only brought out part of the incident and that he should be able to ask about the weapon. [*Id.* at 142-43.] The district court overruled [Gutierrez]'s objection. [*Id.* at 143.] [Gutierrez] asserts that, pursuant to the rule of optional completeness, he was entitled to question Suits about the details of the offense because the State only brought out part of the offense and it was necessary to inquire further so that the jury could fully understand the offense. *See* Tex. R. Evid. 107. We disagree.

The rule of optional completeness provides in part that when a portion of an act is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act which is necessary to make it fully understood or to explain the same may also be given in evidence. Tex. R. Evid. 107. Evidence that is used to fully explain a matter opened by the other party need not be otherwise admissible. *See Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977). However, the evidence offered for context must be "on the same subject" as the portion already admitted. *See* Tex. R. Evid. 107; *Jernigan v. State*, 589 S.W.2d 681, 694-95 (Tex. Crim. App. 1979). Here, the excluded evidence does not appear to be "on the same subject" of Watson's arrest for public intoxication. It was only after Suits arrested Watson for public intoxication that he discovered Watson was carrying an illegal knife. The State did not inquire beyond the arrest for public intoxication and, therefore, did not "open the door" for [Gutierrez] to inquire into the arrest for carrying an illegal knife. [Gutierrez]'s tenth point of error is overruled.

*Gutierrez*, 85 S.W.3d at 456.

Gutierrez fails to raise a constitutional challenge to the application of Texas Rule of Evidence 107. It is not the role of a federal habeas court to review the state courts' interpretation of the State's own rules of evidence. *See, e.g., Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir. 2011) (noting that federal habeas court's function is not to review a state's interpretation of its own law). Gutierrez has failed to demonstrate how the trial court's evidentiary ruling ran afoul of any specific constitutional right or rendered his trial fundamentally unfair. The state court's determination of this habeas claim was not in conflict with clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence. Gutierrez is not entitled to habeas relief on this ground.

### 2. Disallowing Defense of Self-Defense (Claim 8)

Gutierrez argues that the trial court precluded his counsel from advancing the defense of self-defense, thereby depriving him of due process and a fair trial. Pet. at 8d. The Director contends that in actuality, the trial court did permit Gutierrez to present a theory of self-defense and no basis for error can be identified. Answer at 27-28.

Although Gutierrez asserts that the trial court denied him due process and deprived him of a fair trial by refusing to allow his counsel to present a theory of self-defense, Gutierrez did present the issue of self-defense through his own testimony and obtained a self-defense instruction in the jury charge. 4 R.R. at 227-33; C.R. at 46-47. Thus, contrary to his claim, the trial court did permit the theory of self-defense and there is no basis for this claim.

Moreover, Gutierrez fails to cite any supporting law for his claim, and merely submits a conclusory assertion that he was denied due process and a fair trial. *See* Pet. at 8d. For this

reason as well, his claim should be dismissed.  *See, e.g., Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

For both of these separate reasons, this point of error fails to provide a basis for habeas relief.

## I.      Additional Claims of Ineffective Assistance of Appellate Counsel (Claim 9)

Gutierrez further complains that his appellate counsel failed to: (1) properly raise a Confrontation Clause objection to not being permitted to cross-examine prosecution witness Paul Davies about the victim's prior acts of violence; and (2) raise the conflict of interest stemming from the prosecutor's participation in the hearing on the motion for new trial.  Pet. at 8e.

### 1.      Ineffective Assistance of Appellate Counsel Based on Failure to Raise Rejection of Confrontation Clause Objection to Paul Davies's Testimony (Claim 9a)

Gutierrez claims that his appellate counsel was deficient for failing to properly raise a Confrontation Clause challenge to the trial court's precluding cross-examination of prosecution witness, Paul Davies, about the deceased's prior bad acts of violence.  Pet. at 8e.  The Director counters that trial counsel did not make the necessary Confrontation Clause objection that would have enabled appellate counsel to raise the issue on appeal.

To succeed on an ineffective-assistance-of-counsel-on-appeal claim, Gutierrez must satisfy the two standards set out in *Strickland*.  *See supra* Section II.B; *see also Smith*, 528 U.S. at 286, 120 S. Ct. at 764 (explaining that *Strickland* provides standard for evaluating appellate counsel).  Under the second *Strickland* prerequisite, counsel becomes ineffective when counsel's errors are prejudicial, that is, when there is a reasonable probability that but for the error, the

ultimate result would have been different.  To demonstrate prejudice, a petitioner must show that, but for counsel's deficient performance, he would have prevailed on appeal.  *Id.*

Gutierrez fails to show deficient performance or prejudice.  He argues that appellate counsel should have raised a Confrontation Clause issue in relation to being able to cross-examine Paul Davies about the criminal history of the victim.  Trial counsel, however, failed to make a Confrontation Clause objection; rather, Gutierrez's trial counsel attempted to elicit testimony regarding the victim's reputation, bad acts, and extraneous offenses under Rules 404 and 405 of the Texas Rules of Evidence.  *See* Appellant's Br. at 37, *Gutierrez v. State*, No. 03-01-00345-CR (Tex. App.–Austin, Jan. 18, 2002); 4 R.R. at 31-40.  Because trial counsel made no objection under the Confrontation Clause, Gutierrez cannot show that appellate counsel was deficient for failing to raise that issue on appeal, or that Gutierrez was prejudiced by that failure.  *See* TEX. R. APP. P. 33.1(a)(1); *see also, e.g., Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) (defendant's failure to object to trial court's written response to jury question waived error on appeal).

The state court's determination that this claim could not serve as a basis for habeas relief was not an unreasonable application of the clearly established federal law of *Strickland*, and federal habeas relief based on this ground must also be denied.

## 2.    Failure to Raise Prosecutor Conflict of Interest on Appeal (Claim 9b)

Gutierrez argues that appellate counsel was ineffective in failing to raise on appeal the issue of an impermissible conflict of interest in a prosecutor serving as a witness at the new-trial hearing and then also assisting another assistant district attorney with the hearing by delivering

closing argument. Pet. at 7, 8e. The Director contends that that the underlying issue was meritless and thus a failure to raise it cannot represent the necessary deficiency or prejudice. Answer at 36-37. The Director also argues that the issue was not stronger than the issues raised by counsel on appeal, and cannot support an ineffective assistance claim for this reason. *Id.*

Because the underlying error fails on the merits, *see supra* Section II.E, Gutierrez cannot demonstrate deficiency or prejudice stemming from appellate counsel's failure to raise a meritless issue. *See, e.g., Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

Additionally, Gutierrez's claim of ineffective assistance of appellate counsel should be dismissed for separate reason. Gutierrez supports his claim with only conclusory contentions, which is a further basis to deny relief. *See, e.g., Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

The state court's determination was not an unreasonable application of the clearly established law of *Strickland* and this claim should also be denied.

### RECOMMENDATION

It is recommended that Gutierrez's application for writ of habeas corpus be denied.

### CERTIFICATE OF APPEALABILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C.

§ 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). In cases in which a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Gutierrez's Section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

**OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 19th day of May, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE